IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| LEON RIOS ALTAMIRANO, | § § | |
| Petitioner, | § § | |
| v. | § § | 1:26-CV-33-RP |
| PAMELA BONDI, *in her official capacity as Attorney General of the United States*, et al., | § § § § | |
| Respondents. | § § | |

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

Before the Court is Petitioner Leon Rios Altamirano's ("Petitioner") Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, filed on January 7, 2026. (Dkt. 1). On January 12, 2026, pursuant to 28 U.S.C. § 2243, the Court ordered Respondents to show cause as to why the petition should not be granted. (Dkt. 4). On January 15, 2026, Respondents Pamela Bondi, Kristi Noem, Todd Lyons, and Sylvester Ortega[1] (together, "Respondents") timely filed a response in opposition. (Dkt. 6). Having considered the parties' arguments, the evidence presented, and the relevant law, the Court will grant Petitioner's Petition for Writ of Habeas Corpus.

## I. BACKGROUND

Petitioner is detained at the T. Don Hutto Detention Center located in Taylor, Texas. (Pet., Dkt. 1, at 7). After entering without inspection, Petitioner has resided in the United States for more than twenty years. (*Id.*). On October 31, 2025, Petitioner was arrested by U.S. Immigration and Customs Enforcement ("ICE") in an early-morning immigration enforcement operation at his place of work. (*Id.* at 14). He is currently detained by Respondents pending removal proceedings. (*Id.* at 7–8). Specifically, Respondents assert that Petitioner is being detained under "mandatory detention"

---

[1] All individual respondents were sued in their official capacities. The Response is filed only on behalf of the federal employees in this action. (Dkt. 6, at 1 n.1).

1

authority for aliens who are in the process of entering the United States, 8 U.S.C. § 1225. (Resp., Dkt. 6, at 3; *see also Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025)).

Petitioner challenges his detention through a writ of habeas corpus under 28 U.S.C. § 2241. Petitioner brings claims that his ongoing detention without bond is unlawful in violation of his Fifth Amendment Due Process rights, the Immigration and Nationality Act ("INA"), the Suspension Clause, and the Administrative Procedure Act ("APA"). (Pet., Dkt. 1, at 24–28).

## II. DISCUSSION

Respondents submitted an "abbreviated response" in which they "acknowledge that this Court's prior rulings concerning similar challenges to the government policy or practice at issue in this case, and the common question of law between this case and those rulings, would control the result in this case should this Court follow its legal reasoning in its prior decisions." (Resp., Dkt. 6, at 1–2). Indeed, Respondents concede that "the factual and legal issues presented in the instant habeas petition do not differ in any material fashion from those presented in" a number of other cases where this Court and other district courts in the Western District of Texas have found detention under the asserted statutory authority to be unlawful. (*Id.* at 2).

Respondents ask the Court to "incorporate the filings in" seven cases: *Navarro v. Bondi et. al*, No. 5:25-CV-1468-FB (W.D. Tex. Dec. 2, 2025); *Moradi v. Thompson et al.*, No.5:25CV1470-OLG (W.D. Tex. Dec. 18, 2025); *Reyes v. Thomspon et al.*, No. 5:25-CV-1590-XR (W.D. Tex. Dec. 12, 2025); *Acosta-Balderas v. Bondi et al.*, No.5:25-CV-1629-JKP (W.D. Tex. Dec. 11, 2025); *Tisighe v. De Anda-Ybarra et al.*, 3:25-CR-593-KC (W.D. Tex. Dec. 5, 2025); *Chauhan v. Noem et al.*, 3:25-CV-574-DB (W.D. Tex. Dec. 8, 2025); and *Gvedashvili v. Mooneyham et al.*, 6:25-CV-552-ADA-DTG (W.D. Tex. Dec. 22, 2025). The Court assumes that Respondents intended to incorporate specifically their responses in those cases and has reviewed such responses. While some of the cases cited by Respondents speak to issues not squarely before the Court here—for example, the possible

distinction between 8 U.S.C. §§ 1225(b)(1) and (b)(2)—the Court addresses the arguments from those responses that appeared relevant below, in addition to generally reproducing its past reasoning on mandatory and discretionary detention for individuals like Petitioner.[2]

### A. Subject Matter Jurisdiction

Across the briefing in the referenced cases, Respondents variously argue that where petitioners challenge detention pending removal proceedings, district courts are stripped of jurisdiction to review those challenge under the jurisdiction stripping provisions of the INA. They assert, at different times and in different combinations, 8 U.S.C §§ 1252(b)(4),[3] (b)(9), and (g) and 8 U.S.C. § 1226(e) as potential bars to this Court's jurisdiction. The Court evaluates each in turn.

First, 8 U.S.C. § 1252(b)(9) channels "[j]udicial review of all questions of law . . . including interpretation of constitutional and statutory provisions, arising from any action taken . . . to remove an alien from the United States" to the appropriate federal court of appeals—here, the Fifth Circuit. However, the Supreme Court has indicated that where a Petitioner is not "asking for review of an order of removal," "challenging the decision to detain them in the first place or seek removal," or "challenging any part of the process by which their removability will be determined," § 1252(b)(9) is not a jurisdictional bar. *Nielsen v. Preap*, 586 U.S. 392, 402 (2019). Petitioner's challenge to his

---

[2] The Court declines to treat *Tisighe v. De Anda-Ybarra et al*, 3:25-CR-593-KC (W.D. Tex. Dec. 5, 2025) as incorporated into Respondents briefing here, because *Tisighe* is a criminal case that (1) does not have a clear bearing on the case before the Court—and Respondents do not explain the significance of *Tisighe* to this case—and (2) has briefing filed under seal and therefore inaccessible to Petitioner. While Respondents generally did not follow the Court's instruction that "Respondents should file the referenced briefing as an attachment for Petitioner's counsel's review," (Order to Show Cause, Dkt. 4, at 3), the Court will nonetheless consider briefing from the other referenced cases in making its decision here.

[3] Respondents cite 8 U.S.C. § 1225(b)(4) for the proposition that "even if the alien claims he is not appropriately categorized as an applicant for admission subject to § 1225(b), such a challenge must be raised before an immigration judge in removal proceedings." (See, e.g., *Navarro*, No. 5:25-CV-1468-FB, Resp., Dkt. 11, at 10). Section 1225(b)(4) deals with the ability of an immigration officer to challenge another immigration officer's favorable admission decision and appears to have no relation to the question before the Court here; the Court presumes that Respondents intended to refer to 8 U.S.C. § 1252(b)(4), which discussed the scope and standard of review for orders of removal, and will rule on that basis and refer to § 1252(b)(4) in this opinion. However, if Respondents intended to refer to § 1225(b)(4) as a jurisdictional bar to Petitioner's claims, the Court finds nothing in that subsection that bars its jurisdiction here.

3

continued detention without bond as unlawful under the INA, APA, and U.S. Constitution does not fall into any of those categories. *See Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020) ("§ 1252(b)(9) does not present a jurisdictional bar where those bringing suit are not asking for review of an order of removal, the decision to seek removal, or the process by which removability will be determined."). Rather than challenging his removal proceedings, Petitioner challenges the lawfulness of his detention without bond during the pendency of his removal proceedings. Thus, § 1252(b)(9) poses no bar.[4]

Second, to the extent that Respondents invoke § 1252(b)(4), that section fails to assert a valid jurisdictional bar for the same reasons. Under 8 U.S.C. § 1252, titled "Judicial Review of Orders of Removal," Subsection (a)(1) indicates that "[j]udicial review of a final order of removal . . . is governed only by chapter 158 of Title 28, except as provided in subsection (b)." *See* 8 U.S.C. § 1252(a)(1). Section 1252(b) generally, and (b)(4) specifically, elaborates on "requirements for review of orders of removal" as set forth in Subsection (a)(1). Because Petitioner does not assert a challenge to an order of removal, nothing in that subsection bars Petitioner from seeking relief from his continued detention in this case.

---

[4] The Court is aware of the Third Circuit's recent decision in *Khalil v. President, United States of America*, Nos. 25-2162 & 25-2357 (3d Cir. Jan. 15, 2026). There, a divided panel of the Third Circuit found that § 1252(b)(9) was a jurisdictional bar to a district court considering claims that included unlawful detention. *Id.*, slip op. 22– 33. Critically, however, the Third Circuit's reasoning centered on the fact that the petitioner—even in his detention arguments—was challenging the lawfulness of the decision to deport him and the underlying question of his removability. As the majority explained when addressing the petitioner's detention claims, "[t]hough [petitioner] also challenges his detention, his arguments against it are identical to his arguments against removal." *Id.* at 28. As a result, the Court concluded that "addressing any of those claims would require deciding whether removing [petitioner] would be unlawful—the very issue decided through the [petition for further review] process." *Id.* at 26. The Third Circuit clarified that "[t]o be sure, some claims can be detention-specific," just not claims that "repackage[] [petitioner's] challenges to his removal." *Id.* at 28. In fact, the Third Circuit specifically distinguished its decision in *Khalil* from cases where "petitioners were not 'challenging the decision to detain them' but only the bond procedures used" and where petitioners "challenged only the length of confinement without a bond hearing, a claim that does not get channeled into the PFR review process." *Id.* at 32–33. Here, Petitioner is not challenging the decision to seek his removal nor asking the Court to decide his removability. Instead, like the cases the Third Circuit specifically distinguished, the question here is detention-specific: only whether, as a matter of law, Petitioner falls under the mandatory detention authority of § 1225 while his removal proceedings are ongoing.

Third, 8 U.S.C. § 1252(g)—unless other laws provide jurisdiction—strips all courts of jurisdiction to hear "any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). However, as interpreted by the Supreme Court, this Section applies "only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (emphasis in original). Thus, § 1252(g) does not apply to all claims with any relationship to deportation proceedings. Because Petitioner challenges the lawfulness of his continued detention during the pendency of his removal proceedings, it is not a challenge to one of the "three discrete events along the road to deportation" to which § 1252(g) applies. *Reno*, 525 U.S. at 482.

Finally, 8 U.S.C. § 1226(e) states, in full, that "[t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole." Here, Petitioner is not challenging a discretionary decision to grant or deny parole under 8 U.S.C. § 1226, but instead the determination that, as a matter of law, his detention is governed by 8 U.S.C. § 1225—*not* § 1226. As such, Respondents cannot assert a jurisdictional bar to the instant petition.[5]

---

[5] The Court also notes that, to the extent an administrative exhaustion requirement would normally apply in this situation, "[b]ecause Respondents argue the detention of Petitioner is mandatory, claiming no one, including the [immigration judge], can review the detention issue, any attempt to require Petitioner to exhaust any administrative remedies [would be] futile." *See Lorenzo C. P., v. Noem*, No. 1:25-CV-181, 2025 WL 3684859, at *5 (S.D. Tex. Oct. 31, 2025); *see also Shi v. Lyons*, No. 1:25-CV-274, -- F. Supp. 3d --, 2025 WL 3637288, at *4 n.6 (S.D. Tex. Dec. 12, 2025) (holding that administrative exhaustion would be futile in light of *Matter of Yajure Hurtado*).

## B. Petitioner's Petition for Writ of Habeas Corpus

At the heart of this dispute are two provisions of the INA: 8 U.S.C. §§ 1225(b)(2) and 1226, the statute's mandatory and discretionary detention provisions. Under § 1225(b)(2), the INA requires mandatory detention for a noncitizen who is either subject to expedited removal under § 1225(b)(1) or—at issue here—an "applicant for admission" who is "seeking admission," where the examining immigration officer determines the individual to not be "clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2). Individuals detained under § 1225(b)(2) receive no bond hearing and can only be released on humanitarian parole at the arresting agency's discretion. *See Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018); 8 U.S.C. § 1192(d)(5).

By contrast, 8 U.S.C. § 1226(a) provides for the discretionary detention of noncitizens arrested "on a warrant." Section 1226 allows for release on bond and provides "procedural protections that are not afforded under the mandatory detention statute, such as the right to a bond re-determination hearing in front of an Immigration Judge and a right to appeal any custody determination." *Chiliquinga Yumbillo v. Stamper*, No. 2:25-CV-00479-SDN, 2025 WL 2783642, at *2 (D. Me. Sept. 30, 2025).

Respondents contend that § 1225(b)(2) applies to anyone who, like Petitioner, is a noncitizen who was found to be present within the United States without ever having been admitted or paroled—regardless of how long such an individual has been present in the country. (Resp., Dkt. 6, at 3). This position relies on § 1225(a)(1)'s definition of an "applicant for admission" as "an alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). Given this definition, "applicant for admission" would be a broad enough category to include an individual like Petitioner, who was not admitted to the United States, regardless of how long that individual has resided in the United States.

However, 8 U.S.C. § 1225(b)(2) references not just an "applicant for admission," but an "applicant for admission" who is "seeking admission." Many other courts both within and outside of this District have read this "seeking admission" requirement to mean a noncitizen present in the United States without admission who *has recently arrived and is actively seeking admission*, not a noncitizen who has been residing in the country for years. *See Aguilar v. Bondi*, No. 5:25-CV-01453-JKP, -- F. Supp. 3d --, 2025 WL 3471417, at *5 (W.D. Tex. Nov. 26, 2025); *Rojas Vargas v. Bondi*, No. 1:25-CV-01699-DAE, 2025 WL 3251728, at *3 (W.D. Tex. Nov. 5, 2025); *Rodriguez-Acurio v. Almodovar*, No. 2:25-CV-6065 (NJC), 2025 WL 3314420, at *22 (E.D.N.Y. Nov. 28, 2025); *Romero v. Hyde*, 795 F. Supp. 3d 271, 283–84 (D. Mass. 2025). In fact, again as noted by multiple other courts, reading § 1225(b)(2) as Respondents suggest would make "seeking admission" surplus language that has no effect on the meaning of the provision. *Martinez v. Hyde*, 792 F. Supp. 3d 211, 218 (D. Mass. 2025) ("Respondents' selective reading of the statute—which ignores its 'seeking admission' language—violates the rule against surplusage and negates the plain meaning of the text."); *see also Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 488 (S.D.N.Y. 2025) ("If, as Respondents argue, § 1225(b)(2)(A) were intended to apply to all 'applicant[s] for admission,' there would be no need to include the phrase 'seeking admission' in the statute."); *Aguilar*, No. 5:25-CV-01453-JKP, at *6 (quoting *id.*) ("Respondents interpretation 'would render the phrase "seeking admission" in § 1225(b)(2)(A) mere surplusage.").

Similarly, reading § 1225(b)(2) as sweeping so broadly would also eliminate much of the meaning of § 1226: nearly every noncitizen would be subject to mandatory detention, making it unclear why the INA also contains a broadly worded discretionary-detention provision. *See Lopez Benitez*, 795 F. Supp. 3d at 490.[6] It is well-established that "[i]nterpretations of statutes and

---

[6] As the United States District Court for the Southern District of New York explained in *Lopez Benitez*, "Respondents' novel position would expand § 1225(b) far beyond how it has been enforced historically, potentially subjecting millions more undocumented immigrants to mandatory detention, while simultaneously

regulations that avoid surplusage are favored." *Sanderson Farms, Inc. v. Occupational Safety & Health Rev. Comm'n*, 964 F.3d 418, 425 (5th Cir. 2020). As a result, a more natural way to read the plain language of these two statutory sections alongside one another is to read § 1226 as governing detention of noncitizens already residing in the United States and § 1225 as governing detention of recently arrived noncitizens who are actively seeking admission to the country.

In some of the referenced cases, Respondents cited the Fifth Circuit case *Martinez v. Mukasey*, 519 F. 3d 532 (5th Cir. 2008), for the proposition that "seeking admission" means effectively the same thing as "applicant for admission." (*See, e.g., Chauhan*, No. 3:25-cv-574-DB, Resp., Dkt. 5, at 6–7). However, the decision in *Martinez* construes the meaning of "admission" and "admitted" in a different provision of the INA—not the question of whether "seeking admission" adds anything to the meaning of § 1225(b)(2). As noted above, the statutory definition of "applicant for admission" is broad enough—were it used on its own—to possibly encompass a noncitizen in Petitioner's position. The question is not, then, whether the INA defines "admission" or "admitted" in reference to lawful inspection and entry: it is whether the idea of "seeking admission" adds anything to § 1225(b)(2). Given that reading "seeking admission" to cabin § 1225(b)(2)'s application to recent entrants both avoids reading that language as mere surplusage and allows § 1225(b)(2) to fit more naturally with § 1226, the Court is persuaded by that textual reading.

This reading is further supported by legislative history, recent amendments, and longstanding agency practice. Both § 1225(b)(2) and § 1226 were enacted as part of the Illegal Immigration

---

narrowing § 1226(a) such that it would have extremely limited (if any) application. If, as Respondents contend, anyone who has entered the country unlawfully, regardless of how long they have resided here, is subject to mandatory detention under § 1225(b)(2)(A) . . . then it is not clear under what circumstances § 1226(a)'s authorization of detention on a discretionary basis would ever apply. Perhaps it might still apply to a subset of noncitizens who are lawfully admitted (e.g., on a visa of some sort), and who then remain present unlawfully. But there is no indication that Congress intended § 1226 to be limited only to visa overstays. And there is nothing in the history or application of § 1226 to even remotely suggest that it was intended to have such a narrow reach."

Reform and Immigrant Responsibility Act ("IIRIRA") of 1996, Pub. L. No. 104-208, Div. C, §§ 302–03, 110 Stat. 3009-546, 3009–582 to 3009–583, 3009–585. The IIRIRA left in place an earlier distinction between noncitizens arrested in the interior of the country (not subject to mandatory detention) and noncitizens stopped at the border (subject to mandatory detention). *See Maldonado Vazquez v. Feeley*, No. 2:25-CV-01542-RFB-EJY, 2025 WL 2676082, at *4 (D. Nev. Sept. 17, 2025). This dual approach was reflected by the Supreme Court in 2018 in *Jennings*, which did not squarely address the issue in the present case, but framed the distinction between § 1225 and § 1226 as follows:

> In sum, U.S. immigration law authorizes the Government to detain certain aliens *seeking admission* into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c).

*Jennings*, 583 U.S. at 289 (emphasis added).

A recent amendment to the INA reinforces this reading. Earlier this year, the Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025), amended § 1226, authorizing mandatory detention for certain categories of individuals who entered the United States without inspection. Specifically, the Act created § 1226(c)(1)(E), which requires mandatory detention for people who both (1) are charged as being inadmissible for entry without inspection or lacking valid documentation to enter the United States **and** (2) have been arrested, charged with, or convicted of certain crimes. 8 U.S.C. § 1226(c)(1)(E). This amendment reinforces the idea that noncitizens who entered the country without inspection but have been present for years—i.e., are not actively "seeking admission"—are generally subject to discretionary detention under § 1226. If all noncitizens charged as inadmissible due to entry without inspection were already subject to mandatory detention under § 1225(b)(2), it would make no sense for Congress to have amended the statute to require mandatory detention for specific subcategories of those individuals. *See Rodriguez v. Bostock*, No. 3:25-CV-05240-TMC, 2025 WL 2782499, at *19 (W.D. Wash. Sept. 30, 2025). The Court is not persuaded by Respondents'

9

assertion, again found in some of the referenced cases, that the Laken Riley Act should be read as merely redundant, out of a recognition that "drafters *do* repeat themselves and *do* include words that add nothing of substance." (*See, e.g., Chauhan*, No. 3:25-cv-574-DB, Resp., Dkt. 5, at 10–11). What Respondents allege to be mere redundancy is not simple repetition or a few words that add nothing of substance—their allegation is that the entire change that the Laken Riley Act made to § 1226 is effectively meaningless. By contrast, Congress's amendments fit logically into the statute if § 1225 and § 1226 are read as Petitioner suggests. *See Aguilar*, No. 5:25-CV-01453-JKP, at *5 (reasoning that "Congress's amendments [through the Laken Riley Act] fit logically into the statute if § 1225 and § 1226 are read as Petitioner suggests").

The interpretation that § 1225 applies to recent entries and § 1226 applies to noncitizens already residing in the United States is also supported by longstanding agency regulations and practice. U.S. Department of Justice's Executive Office for Immigration Review ("EOIR") regulations drafted after the IIRIRA was passed reflect this distinction, and from 1996 to 2025, agencies consistently interpreted § 1225 and § 1226 as providing for mandatory detention of noncitizens arrested near international borders or who recently arrived in the United States and discretionary detention of noncitizens already residing in the United States. *See Lopez-Arevelo v. Ripa*, No. EP-25-CV-337-KC, 2025 WL 2691828, at *7 (W.D. Tex. Sept. 22, 2025); *Vasquez*, 2025 WL 2676082, at *15; *Rodriguez*, 2025 WL 2782499, at *24–26.

This approach changed in July 2025, when DHS introduced internal guidance directing that noncitizens long-present in the United States who had not been admitted were now to be treated "in the same manner that 'arriving aliens' have historically been treated," i.e., subject to mandatory detention under § 1225(b) and therefore ineligible for custody redetermination hearings in front of immigration judges or release except on parole granted by DHS. *Vasquez*, 2025 WL 2676082, at *9–10. This new agency interpretation was adopted by the Board of Immigration Appeals ("BIA") in

*Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). There, the BIA held that the immigration judge "did not have authority over the bond request because aliens who are present in the United States without admission are applicants for admission as defined under . . . 8 U.S.C. § 1225(b)(2)(A), and must be detained for the duration of their removal proceedings." *Id.* at 220.

*Matter of Yajure Hurtado* was a departure from the BIA's previous interpretation of the statute. *See Rodriguez*, 2025 WL 2782499, at *5. For example, in *Matter of Akhmedov*, 29 I. & N. Dec. 166 (BIA 2025), a decision from one month before *Matter of Yajure Hurtado*, the BIA applied § 1226 to the detention of a noncitizen who had entered the United States without inspection three years prior. That decision was designated as precedent by the U.S. Attorney General. *See Rodriguez*, 2025 WL 2782499, at *5. Moreover, in an unpublished 2023 decision dealing with the application of § 1225(a)(2) versus § 1226 to a noncitizen already present in the United States, the BIA itself said that it was "unaware of any precedent stating that an Immigration Judge lacks authority to redetermine the custody conditions of a respondent in removal proceedings under the circumstances here." *See id.* at *26. While the BIA's interpretation of the INA is not entitled to any deference by this court under *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024), *Matter of Yajure Hurtado*'s inconsistency with prior pronouncements reduces even its "power to persuade." *Loper Bright,* 603 U.S. at 402 (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944)); *see also Buenrostro-Mendez v. Bondi*, No. CV H-25-3726, 2025 WL 2886346, at *3 n.3 (S.D. Tex. Oct. 7, 2025) (collecting cases declining to follow *Matter of Yajure Hurtado* under *Loper Bright*).

District courts across the country have been weighing this new interpretation. Repeatedly, they have found that DHS and BIA's construction of the INA is incorrect and that petitioners who have long resided in the United States but are being held under § 1225 are entitled to relief. *See Buenrostro-Mendez*, 2025 WL 2886346, at *3 ("As almost every district court to consider this issue has concluded, 'the statutory text, the statute's history, Congressional intent, and § 1226(a)'s application

11

for the past three decades' support finding that § 1226 applies to these circumstances.") (citing *Pizarro Reyes*, 2025 WL 2609425, at *4); *see also Lopez-Arevelo*, 2025 WL 2691828, at *7 ("In recent weeks, courts across the country have held that this new, expansive interpretation of mandatory detention under the INA is either incorrect or likely incorrect."); *Rodriguez*, 2025 WL 2782499, at *1 & n.3 (W.D. Wash. Sep. 30, 2025) (collecting cases and noting that "[e]very district court to address" the statutory question "has concluded that the government's position belies the statutory text of the INA, canons of statutory interpretation, legislative history, and longstanding agency practice"); *Belsai D.S. v. Bondi*, No. 25-cv-3682, 2025 WL 2802947, at *6 (D. Minn. Oct. 1, 2025) (joining the "chorus" of courts concluding that § 1226 applies).

For the reasons discussed above and cited by other district courts—the statute's text, the statute's history, congressional intent, and the consistent past application of the statute—the Court concludes that Petitioner is correct that his detention under § 1225(b)(2) is in violation of the INA. Having determined that Petitioner cannot be detained under § 1225(b)(2) and that he is therefore entitled to relief, as described below, the Court does not reach Petitioner's constitutional or APA claims.

### III. CONCLUSION

The foregoing order constitutes the Court's findings of fact and conclusions of law. For the reasons discussed above, **IT IS ORDERED** that Petitioner's Petition for Writ of Habeas Corpus is **GRANTED** as follows.

1. Upon receipt of this order, Respondents shall <u>immediately</u> release Petitioner from custody;

2. Respondents shall release Petitioner under conditions no more restrictive than those in place prior to the detention at issue in this case;

3. As soon as is practicable, and no less than two hours before release, respondents shall notify Petitioner's counsel by email[7] of the exact location and time of Petitioner's release;

4. Respondents are enjoined from further detaining Petitioner under the asserted detention authority, 8 U.S.C. § 1225.

**IT IS FURTHER ORDERED** that Respondents shall provide a status report on **or before January 20, 2026**, detailing their compliance with this Order.

**SIGNED** on January 16, 2026.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

---

[7] Stephen O'Connor, steve@oconnorimmigration.com.